United States District Court
Southern District of Texas
**ENTERED**
January 13, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANNY RICHARD RIVERS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-00226 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Danny Richard Rivers is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division and is currently incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, Rivers filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 9, 2019. (D.E. 1, 2). Liberally construed, Rivers claims that McConnell Unit officials violated his due process rights under the Fifth and Fourteenth Amendments during disciplinary proceedings. Respondent filed an amended motion for summary judgment on December 11, 2019, to which Rivers has not responded. (D.E. 12). As discussed more fully below, it is respectfully recommended that Respondent's amended motion for summary judgment (D.E. 12) be granted and Rivers' § 2254 petition be denied. It is further recommended that a Certificate of Appealability ("COA") be denied and Respondent's original motion for summary judgment (D.E. 10) be denied as moot.

### I. JURISDICTION

Jurisdiction and venue are proper in this court because the prison disciplinary

hearing about which Rivers complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## II.   BACKGROUND

### a.   Disciplinary and Grievance Records

Rivers is serving a 38-year total sentence after being convicted of continuous sexual abuse of a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. (D.E. 12-2 at 6-7). Rivers does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing. (D.E. 1 at 6).

In May 2018, Rivers was charged with engaging in a fight with another offender without a weapon that resulted in a serious injury. (D.E. 13-2 at 4). The charging officer indicated that Rivers got in a fight with offender Steven Sebring that involved punching and shoving. The altercation resulted in injuries to both Rivers and Sebring that required treatment beyond first aid. The officer stated that Rivers admitted to fighting Sebring because Sebring accused him of being a "snitch." Rivers also told the officer that other gang member offenders later began assaulting both Rivers and Sebring. (*Id.*).

Medical records following the fight indicated that Rivers suffered extensive facial fractures and Sebring was sent to the emergency room. (*Id.* at 6, 10-11). Pictures were taken documenting the injuries of Rivers and Sebring. (*Id.* at 8-10).

The hearing record indicated that Rivers stated that he was assaulted by Sebring, who accused him of being a "snitch," and then they were attacked by a gang. (*Id.* at 3,

2

16, 19). The charging officer stated that, although Rivers was found with injuries, he admitted to fighting Sebring. On cross-examination, the officer reiterated that both Rivers and Sebring admitted to fighting each other and that they were later attacked by other offenders. However, the charging officer stated that he was unable to determine whether the injuries came from the initial fight between Rivers and Sebring or the subsequent attack by the gang. (*Id.*). Following the hearing, Rivers was found guilty and lost 45 days of recreation privileges, 45 days of commissary privileges, 45 days of telephone privileges, 30 days of good time, and had his line class reduced. (*Id.* at 3). The decision was based on the officer's report, officer testimony, and other witness testimony. (*Id.*).

In his Step 1 grievance, Rivers argued that he did not fight Sebring or even defend himself. Rivers claimed that Sebring came to Rivers' housing unit, assaulted him, and later they were both attacked by a gang. (D.E. 13-1 at 5). Rivers stated that he suffered severe facial fractures and spent multiple days in the intensive care unit before having reconstructive surgery. Rivers stated that Sebring punched him not more than three times before Rivers became unconscious. Thus, Rivers argued that his injuries could not have come from Sebring and that he did not cause any of Sebring's injuries. Rivers contended that none of the officers could conclude that the injuries of Rivers or Sebring resulted from a fight with each other. (*Id.*). The warden concluded that the disciplinary charges were appropriate, the guilty verdict was supported by a preponderance of the evidence, and all due process requirements were satisfied. (*Id.* at 6).

Rivers then filed a Step 2 grievance, arguing that the warden's conclusions were

3

improper because a preponderance of the evidence supported a not guilty ruling given the facts discussed in the Step 1 grievance. (*Id.* at 7). Rivers' grievance was again denied. The reviewing authority noted that the disciplinary hearing officer properly reviewed and determined the credibility of the evidence presented. (*Id.* at 8).

      **b.**    **Petition and Claims**

In his petition and attached memorandum, Rivers contends that the disciplinary hearing officer's finding of guilt was "arbitrary and capricious" because the evidence submitted did not support a conviction for the charged offense. (D.E. 1 at 6). He argues that the charging officer and investigating officer each testified that they could not conclude the injuries suffered by Rivers and Sebring were a result of a fight between the two. (*Id.*). Rivers argues that, as a result of the disciplinary conviction, he lost good time credits that are vital to the assessment of parole eligibility. (D.E. 2 at 1). Rivers recounts what led up to the fight and, ultimately, the attack on he and Sebring by the gang. (*Id.* at 2-3). He states that, after the fight, he spoke only to a sergeant and not to Lt. McGee, who was the charging officer. (*Id.* at 3). Rivers argues that the evidence at the hearing was insufficient for a guilty verdict because the officers admitted that Rivers and Sebring were attacked by the gang and they could not determine what specifically caused any of their injuries. (*Id.* at 4). Further, he argues that it is more plausible based on the evidence that the injuries he and Sebring suffered were caused by the gang attack, not by a fight with each other. (*Id.* at 7).

**III. DISCUSSION**

In the motion for summary judgment, Respondent first argues that Rivers' loss of

4

privileges and reduction in line class are not cognizable under federal habeas law because changes in the condition of confinement do not implicate due process. (D.E. 12 at 6-8). Second, Respondent contends that the loss of good time credit does not invoke due process concerns because Rivers' convictions for continual sexual abuse of a child and indecency with a child render him ineligible for mandatory supervision. (*Id.* at 8-9). Finally, on the merits, Respondent argues that the evidence at the disciplinary hearing was sufficient to support Rivers' guilt because officers testified to what happened and other evidence in the record established the injuries. (*Id.* at 9-10).

Rivers has not responded.

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum*, 427 U.S. at 229, n.8). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, a right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th

Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[1] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code § 508.147. The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.[2] However, prisoners who commit certain offenses are excluded from eligibility for mandatory supervision. *See* Tex. Gov't Code § 508.149(a) (listing offenses that render an inmate ineligible for release to mandatory supervision). Both continuous sexual abuse of a child, in violation of Tex. Penal Code § 21.02, and indecency with a child, in violation of Tex. Penal Code § 21.11, are excluded offenses. *Id.* § 508.149(a)(5), (16).

Here, Rivers cannot make out a due process cause of action based on his reduction in line class, his loss of good time, or his loss of other privileges. First, as to his reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and, in turn, on the amount of time he is in custody. However, Rivers has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a

---

[1] Currently located at Tex. Gov't Code § 508.001(5).

[2] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended. *See Malchi*, 211 F.3d at 958. The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well. *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Rivers cannot make out a due process claim based on his reduction in line class.

Second, as to his loss of good time, Rivers' convictions for continuous sexual abuse of a child and indecency with a child preclude his release to mandatory supervision. Tex. Gov't Code § 508.149(a)(5). Because Rivers is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits, and thus has failed to make out a claim that his due process rights have been violated. *See Malchi*, 211 F.3d at 957-958 (discussing when prisoners have a liberty interest with respect to their good time). Rivers' loss of other privileges does not present an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-87 (concluding that even placement in disciplinary segregation does not present a dramatic departure from the basic conditions of an offender's sentence).

Finally, even if Rivers could otherwise make out a due process cause of action, the evidence was sufficient to find him guilty of the disciplinary offense. Disciplinary findings are not disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). In practice, this means that the court's only role on review is to determine whether the guilty finding is supported by "any evidence." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Credibility determinations are left to the discretion of the hearing officer. *Id.* As Rivers admits, the charging officer testified that Rivers told him he had a fight with Sebring. (D.E. 2 at 6). Although Rivers now denies having told any officer this, the court does not review

credibility determinations made by the hearing officer. *Hudson*, 242 F.3d at 537. Further, there was evidence in the record of injuries to both Rivers and Sebring. (D.E. 13-2 at 6, 8-11). Although these injuries could have come during the later attack by the gang, the officer's testimony and the evidence of injury are sufficient to meet the exceedingly low "any evidence" standard applicable to the review of a prison disciplinary case. *Hudson*, 242 F.3d at 537. Accordingly, Rivers' § 2254 petition should be denied.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rivers has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, because reasonable jurists would not find it debatable that Rivers failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 12) be GRANTED and Rivers' § 2254 petition be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED and Respondent's original motion for summary judgment (D.E. 10) be DENIED as moot.

Respectfully submitted this 13th day of January, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).